UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

MARK E. DeGEORGE,

                  Plaintiff,

      v.                                      **DECISION AND ORDER**
                                             06-CV-178S

LTD FINANCIAL SERVICES, L.P.,

                  Defendant.

## I. INTRODUCTION

In this action, Plaintiff Mark E. DeGeorge alleges that Defendant LTD Financial Services, L.P. engaged in unlawful debt collection practices in violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq.  Presently before this Court are the parties' Motions for Partial Summary Judgment.  Plaintiff seeks summary judgment on liability;[1] Defendant seeks summary judgment on Plaintiff's claim for actual damages.[2] Due to the existence of material issues of disputed fact, both motions will be denied.

---

[1]In support of his motion, Plaintiff filed the Affirmation of Kenneth Hiller, Esq., with exhibits, a memorandum of law, a Statement of Facts Pursuant to Local Rule 56.1, an Appendix, the Affidavit of Mark E. DeGeorge, the Affirmation of Tami Eichelberger, and a reply memorandum (Docket Nos. 34, 40.) In opposition, Defendant filed a Response to Plaintiff's Statement of Facts Pursuant to Local Rule 56.1 and a memorandum of law.

[2]In support of its motion, Defendant filed a memorandum of law, a Statement of Undisputed Material Facts, a Reply Statement of Undisputed Material Facts, and a reply memorandum of law. (Docket Nos. 30-33, 41, 42.)  In opposition, Plaintiff filed the Affidavit of Mark E. DeGeorge, a memorandum of law, a Statement of Facts pursuant to Rule 56.1, and an appendix.  (Docket No. 36.)

## II.  BACKGROUND

**A.      Facts**

### 1.      Defendant's Attempts to Collect the Debt

In 2002, Plaintiff incurred a $15,000 debt in the form of a loan from JP Morgan Chase Bank, N.A. for the purchase of a Dodge Intrepid.  (Plaintiff's Statement, ¶¶ 3, 4;[3] M. DeGeorge Dep., pp. 34-35.[4])  After Plaintiff stopped making payments, JP Morgan Chase retained Defendant to collect the debt.  (Plaintiff's Statement, ¶ 6; Defendant's Statement, ¶ 1.[5])  Defendant assigned the task of collecting the debt to Ronald Ross, one of its collectors.  (Plaintiff's Statement, ¶¶ 7, 9, 10.)

In February 2006, Ross tried contacting Plaintiff using three different telephone numbers.  (Plaintiff's Statement, ¶ 9.)  On February 1 and 2, 2006, Ross called Plaintiff at his mother's house.  (Plaintiff's Statement, ¶¶ 10A, 10B.)  Ross twice left messages requesting that Plaintiff return his call to an 800 number.  (Plaintiff's Statement, ¶¶ 10A, 10B.)

On February 3, 2006, Ross reached Plaintiff's mother (Janet Hannon) and left a message with her.  (Defendant's Counter Statement, ¶ 10.[6])  Ross then called Plaintiff's brother's house (Wayne DeGeorge),[7] and left the following message:

---

[3]Referring to Plaintiff's Statement of Facts Pursuant to Local Rule 56.1.  (Docket No. 34-4.)

[4]The transcript of Plaintiff's deposition is Exhibit C in Defendant's Appendix.  (Docket No. 32-2.)

[5]Referring to Defendant's Statement of Undisputed Material Facts.  (Docket No. 32.)

[6]Referring to Defendant's Counter Statement to Plaintiff's Statement.  (Docket No. 38.)

[7]Ross retrieved Wayne DeGeorge's telephone number from "insight," a computer software service that provides potential telephone numbers for individuals based on social security numbers, names, etc. (Plaintiff's Statement, ¶ 11; Ross Dep., p. 21.)

> Yes.  The call is for Mr. DeGeorge.  Mr. DeGeorge, my name is Ron Ross, calling long distance from Houston.  I'm trying to contact a Mark DeGeorge.  Spoke with a lady at 592-7019. She advised she would try and get the message to him.  And, also, I'm trying another family member, hopefully.  My number here at my office is (800) 741-2100, Extension 2854.

(Plaintiff's Statement, ¶¶ 8, 10C; Ross Dep., p. 38.[8])

Several minutes after the messages were left at his mother's and brother's houses, Plaintiff called Ross.  (Plaintiff's Statement, ¶ 10E.)  Plaintiff and Ross initially discussed a possible resolution of the debt but acceptable terms could not be reached, at which point both Plaintiff and his mother directed Ross not to call that number in the future.  (Plaintiff's Statement, ¶ 10E.)  Plaintiff did not, however, tell Ross whether he lived with his mother. (Ross Dep., p. 26.)

After this call (still on February 3, 2006), Ross attempted to reach Plaintiff at a third number, but found that the number was not in service.  (Plaintiff's Statement, ¶ 10F.)  Ross then tried unsuccessfully to reach Plaintiff at his brother's house again.  (Plaintiff's Statement, ¶ 10G.)  He left the following message:

> Yes.  This call is for Mark.  Mark, this is Mr. Ross, calling from Houston.  I just spoke with you concerning a very important matter.  You simply hid behind your mom's skirt tail, I guess, and hung up the phone.  That's not a good thing.  This is business, Mark, and you're going to have to learn business. You need to call me here in the office or have someone that will represent you to call me.  We're not - - we're going to continue with our process as far as your - - the law allows and as far as the - - the client will authorize.  And, hopefully, this is - - this will be drawn up here real soon and - - and resolved.  I'm going to be here in my office - - "

---

[8]The transcript of Ross's deposition is Exhibit 6 in Plaintiff's Appendix.  (Docket No. 34-11.)  At the deposition, tapes of the phone messages were played and transcribed by the stenographer.

(Ross Dep., pp. 45, 50-52[9] (hereinafter "the skirt-tail message").)

Later that day, Wayne DeGeorge returned Ross's call and left the following message on Ross's answering machine:

> Yeah.  Hi, Mr. Ross.  My name is Wayne DeGeorge.  I got a - - a message on my machine that you were trying to - - to reach Mark DeGeorge or get a message forwarded to him.  It sounds pretty urgent so I - - I wanted to return your call.  My name is - - is Wayne DeGeorge.  I'm at area code (716) 677-6565.  Thank you.

(Plaintiff's Statement, ¶ 10G; Ross Dep., p. 58.)

It appears that Defendant took no further action to collect the debt, nor did the parties communicate, after February 3, 2006.

### 2.      Plaintiff's Emotional Distress

Plaintiff himself is employed by a law firm as a debt collector and makes telephone calls to collect on delinquent credit card debts.  (Defendant's Statement, ¶ 4; M. DeGeorge Dep., pp. 15-16.)  Plaintiff alleges that Defendant's collection efforts discussed above caused him to suffer emotional distress.  (Defendant's Statement, ¶ 5.)

Plaintiff describes himself as a private person who does not "really talk about things in [his] life."  (M. DeGeorge Dep., pp. 52-53.)  He did not want his mother or family to know that his car had been repossessed.  (M. DeGeorge Dep., pp. 35.)  He was therefore "pretty aggravated," "pissed off," and embarrassed after Ross left the skirt-tail message on his mother's answering machine.  (M. DeGeorge Dep., pp. 51, 52, 60-63, 67, 69.)  In Plaintiff's view, Ross's message was "not nice" and "ridiculous."  (M. DeGeorge Dep., pp. 28, 56.)

---

[9]In Ross's deposition transcript, the message is presented piecemeal, with several breaks for questions.  This Court assumes that this is the entire message.

But Plaintiff did not cry, is not angry or depressed, has not lost sleep on an ongoing basis, and has never sought medical or mental health treatment.  (M. DeGeorge Dep., pp. 68, 70; Defendant's Statement, ¶ 10.)

Plaintiff is also upset by the message Ross left on his brother Wayne's answering machine.  When asked at his deposition how this message made him feel, Plaintiff responded: "I was very upset that my brother was called and basically told that I have a debt, and if I don't pay it, I'm going to have legal paperwork filed against me today. Especially somebody like me that doesn't even talk about their own finances, let alone a car repossession.  And now, all my family knows about it.  It's ridiculous."  (M. DeGeorge Dep., pp. 56.)

Plaintiff claims that he was embarrassed after being "berated" by Ross and having his financial circumstances revealed to his family.  (M. DeGeorge Dep., pp. 67.)  He states that Ross's messages caused him to lose a night's sleep, and were "nerve racking." (M. DeGeorge Dep., pp. 60, 68.)  He claims that his relationship with his mother is now strained because she thinks he is destitute and he is uncomfortable with her because she knows how much money he owes.  (M. DeGeorge Dep., pp. 70, 72-73.)  Plaintiff's relationship with Wayne, however, did not change.  (M. DeGeorge Dep., p. 79.)

Wayne DeGeorge testified that after he received the message on his answering machine, he called Plaintiff "infuriated because it had caused quite a ruckus in [his] household."  (W. DeGeorge Dep., p. 13.[10])  He stated that Plaintiff was "shocked," "defensive," "embarrassed," and "ashamed."  (W. DeGeorge Dep., p. 36-37.)  He said the

---

[10]The transcript of Wayne DeGeorge's deposition is Exhibit D in Defendant's Appendix.  (Docket No. 32-3.)

incident caused his brother stress and embarrassed him.  (W. DeGeorge Dep., pp. 41, 43.)

Wayne DeGeorge does not think this incident changed his relationship with Plaintiff, which

was never close to begin with, although they do look at each other "a little bit different"

when they are together.  (W. DeGeorge Dep., pp. 42, 43.)  Because of this incident,

Wayne DeGeorge views Plaintiff as "less responsible" and has told Plaintiff that.  (W.

DeGeorge Dep., pp. 47-48.)  He also told Plaintiff that he (Wayne) "shouldn't even have

to be dragged into this garbage." (W. DeGeorge Dep., p. 49.)

Plaintiff's mother, Janet Hannon, was also deposed.  She testified that Plaintiff

seemed frustrated about Ross's calls, but "not overly upset."  (Hannon Dep., p. 23.[11])  But

she later stated that Plaintiff had a "hard time" and "would retreat to his room after work,"

and that, in her view, Ross's calls caused Plaintiff to become depressed and anxious.

(Hannon Dep., p. 26.)  Hannon testified that this situation has not changed her relationship

with Plaintiff.  (Hannon Dep., pp. 26, 27.)

**B.     Procedural History**

Plaintiff commenced this action on March 23, 2006, by filing a Complaint in the

United States District Court for the Western District of New York.   (Docket No. 1.)

Defendant filed an Answer on June 16, 2006.  (Docket No. 3.)  After the conclusion of

discovery and mediation efforts, the parties stipulated to the filing of an Amended

Complaint to correct a typographical error.  (Docket No. 26.)  Plaintiff filed his Amended

Complaint on February 1, 2007, which Defendant answered on February 21, 2007.

(Docket Nos. 28, 29.)  Each party moved for Partial Summary Judgment on April 27, 2007.

---

[11]The transcript of Wayne DeGeorge's deposition is Exhibit F in Defendant's Appendix.  (Docket No. 32-3.)

After full briefing, this Court took the motions under advisement on July 5, 2007, without oral argument.  (Docket No. 45.)

### III.  DISCUSSION AND ANALYSIS

**A.      Summary Judgment Standard**

Federal Rule of Civil Procedure 56 provides that summary judgment is warranted where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c).  A "genuine issue" exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).  A fact is "material" if it "might affect the outcome of the suit under governing law."  Id.

In deciding a motion for summary judgment, the evidence and the inferences drawn from the evidence must be "viewed in the light most favorable to the party opposing the motion."  Addickes v. S.H. Kress and Co., 398 U.S. 144, 158-59, 90 S.Ct.1598, 1609, 26 L.Ed.2d 142 (1970).  "Only when reasonable minds could not differ as to the import of evidence is summary judgment proper."  Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991).  The function of the court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249.

**B.      Plaintiff's Motion for Partial Summary Judgment**

The FDCPA is a consumer-protection statute enacted by Congress "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." Alibrandi v. Fin. Outsourcing Servs., Inc., 333 F.3d 82, 85 (2d Cir. 2003) (quoting 15 U.S.C. § 1692(e)).  The statute "establishes certain rights for consumers whose debts are placed in the hands of professional debt collectors for collection, and requires that such debt collectors advise the consumers whose debts they seek to collect of specified rights." DeSantis v. Computer Credit, Inc. 269 F.3d 159, 161 (2d Cir. 2001).  For example, debt collectors are barred from contacting third parties, except to confirm or correct the debtor's location information, see 15 U.S.C. § 1692b(1), unless the debtor consents to such contact or court permission is obtained.  See 15 U.S.C. § 1692c(b).

Plaintiff seeks summary judgment on liability on his claim that Defendant violated 15 U.S.C. § 1692c(b) by communicating with his brother, Wayne DeGeorge.  Plaintiff argues that although the first message Ross left on Wayne's answering machine was fairly benign, the skirt-tail message is indisputably a communication made to collect the debt from Plaintiff in violation of 15 U.S.C. § 1692c(b).

Defendant opposes Plaintiff's motion and contends that the messages Ross left at Wayne's house, including the skirt-tail message, were attempts to confirm or correct Plaintiff's location information, which is a permissible third-party contact under 15 U.S.C. § 1692b(1).  It further argues that even if there was a violation of the FDCPA, it could

reasonably be found a bona fide error under 15 U.S.C. § 1692k(c), which precludes liability if the debt collector "shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error."

It is undisputed that Defendant did not obtain Plaintiff's consent before contacting Wayne DeGeorge. The issue is whether Ross's messages were efforts to collect Plaintiff's debt, or efforts to ascertain his location information. Having reviewed the evidence presented, particularly the transcription of the skirt-tail message, this Court finds that under the totality of the circumstances, a jury could reasonably find in either party's favor.

A jury could determine that the skirt-tail message, with its reference to Plaintiff "hiding" and the implicit threat of legal action, constitutes a violation of the FDCPA's ban on third-party contact under 15 U.S.C. § 1692(c)(b). But it is equally plausible that a jury could find that the skirt-tail message, because it does not explicitly reference a debt or collection efforts,[12] and because Ross was still trying to confirm Plaintiff's location information, is permissible under 15 U.S.C. § 1692(b)(1). Summary judgment is therefore precluded. And because Defendant's bona fide error defense is fact-dependent and relevant only if there is a violation of the FDCPA, that too must be presented to the jury. Consequently, Plaintiff's Motion for Partial Summary Judgment will be denied.

---

[12]Plaintiff relies on <u>Foti v. NCO Financial Sys., Inc.</u> for the proposition that a debt collector does not have to use the words "debt" or "collection" for a communication to be "in connection with the collection of any debt" under the FDCPA. 424 F.Supp.2d 643, 656-58 (E.D.N.Y. 2006). Even assuming that <u>Foti</u>, which was decided under different provisions of the FDCPA and on a motion to dismiss under Rule 12(b)(6), applies, this Court finds that Ross's omission of those words can properly be considered as one of many factors in the totality of the circumstances to determine whether a violation of the FDCPA occurred.

**C.    Defendant's Motion for Partial Summary Judgment**

Debt collectors who violate the FDCPA may be liable to consumers for civil damages, including "any actual damage sustained by such person . . . ."  15 U.S.C. § 1692k.   As this Court recognized in <u>Donahue v. NFS, Inc.</u>, emotional distress is compensable as actual damages under the FDCPA.  781 F.Supp. 188 (W.D.N.Y. 1991) (a plaintiff's "right to recovery of actual damages under the FDCPA, predicated on claimed emotional distress, remains independent of her right, if any, to recover damages for emotional distress under state law"); <u>see</u> <u>also</u> <u>Baruch v. Healthcare Receivable Mgmt., Inc.</u>, 05-CV-5392, 2007 WL 3232090, at *2 n.7 (E.D.N.Y.  Oct. 30, 2007); <u>Teng v. Metro. Retail Recovery Inc.</u>, 851 F.Supp. 61, 69 (E.D.N.Y. 1994).

Defendant moves for partial summary judgment on Plaintiff's claim for actual damages.   Specifically, Defendant argues that Plaintiff's self-serving statements are insufficient to sustain his claim that he suffered emotional distress, and even if established, Plaintiff's claims of emotional distress are inadequate for recovery of actual damages. Plaintiff contends that his statements are buttressed by those of his brother and mother, and that a jury should determine whether he is entitled to actual damages.

Although the evidence of Plaintiff's emotional distress is fairly weak, it nonetheless exists in the record, and Plaintiff is entitled to have a jury determine what, if any, damages he is due.  Plaintiff reports being "pretty aggravated," "pissed off," and embarrassed.  He testified that his emotional distress is due to his financial situation becoming known to his family members after Ross's calls set off a flurry of activity among his mother, brother, sister-in-law, and father.  He claims that he was embarrassed about being berated by Ross

in the skirt-tail message, and claims that his relationship with his mother is now strained.

Moreover, Plaintiff's statements concerning his emotional distress are buttressed in some part by the testimony of his brother and mother.  Wayne DeGeorge testified that Plaintiff was shocked, defensive, embarrassed, and ashamed.  He states that Plaintiff was stressed by this incident, and that he and Plaintiff now look at each other differently because of it.  Janet Hannon testified that Plaintiff was frustrated about Ross's calls and had a hard time and would retreat to his room after work.  In Hannon's opinion, Ross's calls caused Plaintiff to become depressed and anxious.

Again, this is not the strongest evidence of emotional distress, but this Court finds that it is enough to survive summary judgment.  Of course, the evidence that Plaintiff himself is a debt collector, that he did not seek mental health treatment, and did not become depressed or angry as a result of this incident will weigh against a finding of actual damages.  But given the evidence in the record, this Court cannot conclude that Plaintiff's claims are insufficient as a matter of law.  Consequently, Defendant's Motion for Partial Summary Judgment will be denied.

## V.  CONCLUSION

For the reasons stated above, the parties' Motions for Partial Summary Judgment are denied.

**V.  ORDERS**

IT HEREBY IS ORDERED, that Plaintiff's Motion for Partial Summary Judgment (Docket No. 34) is DENIED.

FURTHER, that Defendant's Motion for Partial Summary Judgment is (Docket No. 30) DENIED.

FURTHER, that counsel shall appear before this Court on April 24, 2008 at 9:00 a.m. to discuss how this case will proceed.

SO ORDERED.


Dated:        March 31, 2008
              Buffalo, New York


                                        /s/William M. Skretny
                                         WILLIAM M. SKRETNY
                                        United States District Judge